UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| **NATIONAL RAILROAD PASSENGER CORPORATION,** | ) ) ) ) |   |
| Plaintiff, | ) ) |   |
| v. | ) ) | Civil Action No. 04-1457 (ESH) |
| **LEXINGTON INSURANCE COMPANY,** *et al.*, | ) ) ) ) |   |
| Defendants. | ) ) |   |

## MEMORANDUM OPINION AND ORDER

On September 27, 1999, a Missouri jury awarded more than $20 million[1] to a plaintiff injured in an August 29, 1997 collision between the vehicle in which she was a passenger and an Amtrak train. Following the verdict, National Railroad Passenger Corporation ("Amtrak") notified its excess insurers -- defendants Lexington Insurance Company, St. Paul Reinsurance Company Limited, Unionamerica Insurance Company Limited, and Certain Underwriters at Lloyd's, London subscribing to Lloyd's Excess Liability Claims Made Policy No. N00060A96 -- of the Missouri plaintiff's claim. When the insurers denied Amtrak's request for coverage, it filed suit. Before the Court is defendants' Motion for Summary Judgment, which seeks the

---

[1] The jury awarded $40,366,517.59 in compensatory damages against Amtrak and Union Pacific, which owned both the tracks and the crossing. *See Alcorn v. Union Pacific R.R. Co.*, 50 S.W.3d 226, 231-32 (Mo. 2001). The jury also found Union Pacific liable for $120 million in punitive damages. *Id.* The trial court later reduced the compensatory damage award to $25 million, an amount affirmed by the Supreme Court of Missouri in an opinion reversing the award of punitive damages. *Id.* Under a track usage agreement with Union Pacific, Amtrak was liable for the entire judgment. *See Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 2003 WL 24045159, at *2 (D.D.C. 2003) (Mem. Op.), *aff'd*, 365 F.3d 1104 (D.C. Cir. 2004) ("*Amtrak*").

dismissal of Amtrak's complaint on the ground that it failed to give timely notice of the Missouri case as required by each of the insurers' policies. For the reasons below, the Court will grant defendants' motion.

## BACKGROUND

The facts underlying the present dispute are familiar and need not be repeated here, this being the third dispositive motion to have arisen from the parties' disagreement regarding insurance coverage. *See Amtrak*, 365 F.3d at 1107 (holding that the Missouri claim was not covered under an identical set of policies covering the period from October 1, 1997 to September 30, 1998); *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 357 F.Supp. 2d 287 (D.D.C. 2005) (holding that Amtrak's second suit seeking reimbursement under the policies covering the period from October 1, 1996 to September 30, 1997, was neither barred by the relevant statute of limitations nor the doctrine of laches). At issue here are the requirements of the notice provisions common to each of the defendant insurers' contracts with the railroad[2] -- provisions relating to both "Accidents" and "Claims." (Art. III, ¶ 3.)

Amtrak's notification obligations with regard to "Accidents" -- defined as "event[s] which first commence[] at a specific time after the retroactive date . . . and prior to the expiry date . . . and of which the Insured's Claim Agent first becomes aware during the Policy Period . . . and up to 120 days thereafter" -- are set forth in Condition 3i) of the policies. (Art. III, ¶ 3i); Art. IV, ¶ 1.) Under that provision, the railroad was required to notify the insurers "within 120

---

[2] The Lexington policy is attached as Exhibit A to the Declaration of Dennis Alves on Behalf of Defendant Lexington Insurance Company. The Lloyd's policy is attached as Exhibit A to the Declaration of Julie Miller on Behalf of Defendants Certain Underwriters at Lloyd's, London. The Unionamerica/St. Paul policy -- which incorporates the language of the Lloyd's policy by reference -- is attached as Exhibit A to the Declaration of Christopher Neil on Behalf of Defendants St. Paul Reinsurance Company Limited and Unionamerica Insurance Company Limited. Because the relevant policy language is identical in most respects, the Court will generally cite only to the common paragraphs of the agreements.

days of the value being established . . . of those Accidents on which a value on the [railroad's] liability equal to or greater than the [the agreements' threshold] amount . . . is established . . . ."[3] (Art. III, ¶ 3i); *see also* Alves Decl. Ex. A at 001015 (Lexington Policy Art. II, ¶ 25) ("This policy shall not apply . . . to any liability for any Claim arising from an Accident which has not been notified in accordance with Condition 3."); Miller Decl. Ex. A at 000752 (Lloyd's Policy Art. II, ¶ 23) (same).) In establishing an accident's value, Amtrak was to give "due consideration" to a number of factors, among them "the reasonable settlement or judgment value of the claimed or known injuries and/or property damage" and the railroad's "probable liability[.]"  (Art. III, ¶ 4.)

Amtrak's notification obligations with regard to "Claims" -- broadly defined as "that part of any written demand received by the [railroad] for damages covered by [the policies], including the service of suit, institution of arbitration proceedings or receipt of an attorney's lien" -- are set forth in Condition 3ii) of the policies.  (Art. III, ¶ 3ii); Art. IV, ¶ 8.)  Pursuant to that condition, Amtrak was required to "give immediate notice . . . whenever [it] ha[d] information from which [it] should [have] reasonably conclude[d] that a Claim, alone or in a combination with any other Claims," equals or exceeds the agreements' threshold amounts.[4]

---

[3] Under the Lloyd's and Unionamerica/St. Paul policies, an accident reporting threshold of $2.5 million was established.  (Miller Decl. Ex. A at 000766; Neil Decl. Ex. A at 001100.)  Under the Lexington policy, a lower threshold of $1 million applied.  (Alves Decl. Ex. A at 001009.)

[4] Under the Lloyd's and Unionamerica/St. Paul policies, Condition 3ii) required immediate notice

> whenever the Insured has information from which the Insured should reasonably conclude that a Claim, alone or in a combination with any other Claims, is equal to or greater than the amount stated in Item 5 b) of the Declarations.

3

(Art. III, ¶ 3ii); *see also* Alves Decl. Ex. A at 001015 (Lexington Policy Art. II, ¶ 25); Miller Decl. Ex. A at 000752 (Lloyd's Policy Art. II, ¶ 23).) "For the purpose of this Condition[,]" Amtrak was required to notify the insurers "on the assumption that [it was] liable and further [was] liable for any amount claimed." (*Id.*)

      Defendants contend that Amtrak's September 27, 1999 notification of the Missouri verdict -- which followed the collision by more than two years -- was untimely under Condition 3, thus barring recovery of the $7.5 million in excess coverage available under the policies. (*See* Defs.' Mem. in Supp. at 1; Defs.' Stmt. of Undisputed Mat. Facts ¶ 27 ("Defs.' Stmt.").) While arguing that the railroad failed to satisfy the requirements of both Condition 3i) and Condition 3ii), the insurers focus primarily on the argument that Amtrak violated the latter provision by not giving notice of the Missouri plaintiff's January 21, 1999 written settlement demand of $6.5 million -- a demand exceeding the reporting threshold of each policy. (*See* Defs.' Mem. in Supp. at 18-24.)

---

(Miller Decl. Ex. A at 000753; Neil Decl. Ex. A at 001100.) That amount was, again, $2.5 million. (Miller Decl. Ex. A at 000766; Neil Decl. Ex. A at 001100; *see also* Defs.' Stmt. ¶ 40.)

      Condition 3ii) of the Lexington policy fixed its reporting threshold to the railroad's self-insured retention, requiring immediate notice

> whenever the Insured has information from which the Insured should reasonably conclude that a Claim, alone or in a combination with any other Claims, may deplete the each Accident retention and any remaining underlying amount by 50% or more.

(Alves Decl. Ex. A at 001016; *see also* Defs.' Stmt. ¶ 41.) As Amtrak maintained a self-insured retention of $10 million under the policies, the Lexington policy had a notification threshold of $5 million. (*See* Alves Decl. Ex. A at 001009; *see also* Defs.' Stmt. ¶ 41.)

4

**ANALYSIS**

"An insurance policy is a contract between the insured and the insurer, and in construing it [a court] must first look to the language of the contract." *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 968 (D.C. 1999).[5] When that language is ambiguous, "[e]xtrinsic evidence of the parties' subjective intent may be resorted to[,]"*1010 Potomac Assocs. v. Grocery Mfrs. of America*, 485 A.2d 199, 205 (D.C. 1984), and any doubts are resolved in a manner "consistent with the reasonable expectations of the purchaser of the policy." *Smalls v. State Farm Mut. Auto. Ins. Co.*, 678 A.2d 32, 35 (D.C. 1996). When that language is not ambiguous, however, the policy must be enforced as written, absent a statute or public policy to the contrary. *Cameron*, 733 A.2d at 968-69 (citing *In re Corriea*, 719 A.2d 1234, 1239 (D.C. 1998)); *1010 Potomac Assocs.*, 485 A.2d at 205 ("The first step in contract interpretation is determining what a reasonable person in the position of the parties would have thought the disputed language meant. . . . The writing must be interpreted as a whole, giving a reasonable, lawful, and effective meaning to all its terms" -- "[i]f the document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent.") (internal citations omitted). "A contract is ambiguous only if reasonable people may fairly and honestly differ in their construction of the terms because the terms are susceptible of more than one meaning. A contract is not ambiguous merely because the parties disagree over its meaning." *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 2003 WL 24045159, at *5 (internal quotations omitted).

---

[5] The parties agree that District of Columbia law applies in this case, as the contested policies were delivered to Amtrak's District of Columbia headquarters. (*See* Defs.' Mem. in Supp. at 17; Pl.'s Opp'n at 29; Defs.' Stmt. ¶¶ 31-32.) *See also Liberty Mutual Insurance Co. v. Travelers Indemnity Co.*, 78 F.3d 639, 642 (D.C. Cir. 1996) ("Under District law, insurance contracts are governed by the substantive law of the state in which the policy is delivered.") (citing *Levin v. John Hancock Mut. Life Ins. Co.*, 41 A.2d 841, 843 (D.C. 1945)) .

**I.      Condition 3ii)**

Amtrak does not dispute its receipt of the January 21, 1999 letter demanding $6.5 million for settlement of the Missouri suit, which had been served on Amtrak on January 20, 1998. (*See* Pl.'s Opp'n at 11, 34; Williams Interview Ex. G (letter); Defs.' Stmt. ¶ 2.) Rather, the railroad contends that Condition 3ii) required "immediate" notification of the insurers only where a claim should reasonably have been valued over the relevant thresholds -- $2.5 million for the Lloyd's and Unionamerica/St. Paul policies, or $5 million for the Lexington policy. (Pl.'s Opp'n at 33-34; *see also supra* n. 4.) As the Missouri plaintiff's claim never merited a valuation of $2.5 million or more, Amtrak argues, the requirements of Condition 3ii) were not triggered "prior to the date on which the jury rendered its shocking verdict." (Pl.'s Opp'n at 34.) In providing that the railroad was to "notify [the insurers] on the assumption that [it was] liable and further [was] liable for any amount claimed" (Art. III, ¶ 3ii)), Amtrak maintains that the policy required only that it inform the insurers of the specific amount demanded by a claimant "at such time as [it] 'should reasonably conclude' a claim's value exceeds the reporting threshold." (Pl.'s Opp'n at 36.)

Amtrak's reading of Condition 3ii) cannot be reconciled with the provision's language, which unambiguously required the railroad to give notice of the Missouri suit upon receipt of the plaintiff's $6.5 million demand. "For the purpose of Condition 3.ii)," the railroad was obligated to assume that it was liable for the entirety of the demand in determining whether the amount of the claim exceeded the notification thresholds applicable under each of the policies. (*See* Art. III, ¶ 3ii) ("For the purpose of this Condition 3.ii) the Insured will notify Underwriters on the assumption that the Insured is liable and further is liable for any amount claimed.").) As the

demand was in excess of these amounts, "immediate" notice was required as of January 21, 1999. (*See id.*)  The railroad's contention that there was not, on that date, "information from which [it] should [have] reasonably conclude[d]" that the Missouri plaintiff's claim exceeded the notification thresholds is misplaced. (*See id.*)  In the absence of an express demand, Condition 3ii) would require a determination as to whether Amtrak should have reasonably concluded that the Missouri claim exceeded reporting levels based on other information in its possession.  This is not such a case, however.  Properly read, Condition 3ii) directs Amtrak to look no further than "any amount claimed" in those cases where a specific sum is demanded. (*See id.*)  Notice was accordingly required upon the railroad's receipt of the Missouri plaintiff's January 21 demand letter.

Plaintiff's contrary interpretation obscures the difference between Condition 3i) and Condition 3ii).  The notification requirement of Condition 3i) turns upon the probable "value on the Insured's liability" arising from an accident, a value established with an eye to "the reasonable settlement or judgment value of the claimed or known injuries and/or property damage" and "the probable liability of the Insured[.]"  (Art. III, ¶ 3i); Art. III, ¶ 4.)  Condition 3ii), applicable where an incident has matured into a "written demand" for damages, looks instead to the amount sought by a claimant.  (Art. III, ¶ 3ii); Art. IV, ¶ 8.)  While Amtrak conveniently refers to the "value" of claims in its discussion of the latter provision, the word is conspicuously absent from Condition 3ii).  (*See* Art. III, ¶ 3ii).)  The provision, in fact, omits any reference to the policies' valuation provision, directing the railroad to notify the insurers "on the assumption that [it] . . . is liable for any amount claimed." (*See id.*)  As a result, a requirement of "reasonable valuation[]" cannot be superimposed on Condition 3ii).  (*See* Pl.'s Opp'n at 34.)

The language of Condition 3ii) aside, Amtrak's interpretation of the provision is inconsistent with its function within the broader context of the policies. Under each of the agreements, the insurers "have the right, but not the duty, to participate with the [railroad] in the defense and control of any Claim which may be indemnifiable in whole or in part by th[e] Policy." (Art. III, ¶ 9.) The agreements further require that the insurers "be permitted to investigate any . . . Claim made against [Amtrak]." (*Id.* ¶ 21; *cf. id.* (providing that "Underwriters shall be permitted to investigate any Accident *notified* to Underwriters") (emphasis added).) If the railroad's reading of Condition 3ii) were to be accepted, the insurers' contractual right to investigate and participate in the defense of claims would be effectively limited to the narrow set of cases in which Amtrak determined that its exposure might reasonably exceed contractual thresholds. Such a limitation cannot be found in the policies.

The contested policies, in short, unambiguously obligated Amtrak to notify its excess insurers of the Missouri suit upon receipt of the January 21, 1999 settlement demand. The railroad's post-verdict September 27, 1999 notification of the claim, moreover, was by no means "immediate." (*See* Art. III, ¶ 3ii); *see also* Pl.'s Opp'n at 33-43 (omitting from its discussion of Condition 3ii) any suggestion that its September notice was "immediate" relative to the January settlement demand).) *See also Greycoat Hanover F Street Ltd P'ship v. Liberty Mutual Ins. Co.*, 657 A.2d 764, 769 (D.C. 1995) (holding that an insured "waited unreasonably long" in first notifying an insurer of a lawsuit five months after its filing). Having decided that plaintiff failed to provide timely notice pursuant to Condition 3ii), the Court must address the remaining issue of whether defendant must show prejudice in order to prevail under District of Columbia law.[6]

---

[6] In opposing defendants' Motion for Summary Judgment, Amtrak also suggests that "defendants may now be barred by principles of waiver and estoppel from contending that Condition 3ii) require[d] immediate notice based solely on [the Missouri plaintiff's] settlement demands" as a

8

**II.     Prejudice**

In a majority of jurisdictions, late notice of a claim is generally insufficient to free an insurer of its obligations under a policy absent prejudice stemming from the delay. *See Barry R. Ostranger & Thomas R. Newman, Handbook on Insurance Coverage Disputes* ¶ 4.02[c][2] (13th ed. 2006) (collecting cases). In the District of Columbia, however, "where compliance with notice provisions is a contractual precondition to coverage, a failure to timely notify releases the insurer from liability." *Greycoat Hanover F Street Ltd P'ship*, 657 A.2d at 768 (contrasting District of Columbia law to that of Maryland, which "is more favorable to an insured on the issue of notice in that it requires that the insurer show actual prejudice before it may assert a defense of late notice"); *Diamond Service Co., Inc. v. Utica Mutual Ins. Co.*, 476 A.2d 648, 652 (D.C. 1984) (notice provisions are "of the essence" of insurance contracts and are "given effect in the interest of the public as well as the insurer"); *Greenway v. Selected Risks Ins. Co.*, 307 A.2d 753, 756 (D.C. 1973) (holding that actual prejudice is "not a necessary element" of an insurer's untimely notice defense). The District of Columbia Court of Appeals, in other words, has been clear that an insurer is not required to demonstrate actual prejudice before denying coverage on the basis of an insured's failure to comply with a contractual notice provision. *See Greycoat Hanover F Street Ltd P'ship*, 657 A.2d at 768 n.3.

Acknowledging this, Amtrak contends that this Court should nonetheless "predict that the District of Columbia Court of Appeals would hold that defendants must demonstrate not only

---

result of the insurers' post-verdict investigation, during which Amtrak employees "submit[ted] to lengthy interviews based on defendants' written representation that the 'relevant' notice provision was Condition 3i)." (*See* Pl.'s Opp'n at 42.) This argument is unpersuasive. In the July 27, 2000 letter requesting interviews with representatives of the railroad -- a letter quoting from Condition 3i) but noting in the same paragraph that "several fact issues ha[d] been raised regarding when a 'claim' was first made" -- defendants' counsel unequivocally stated that "[a]ll rights continue[d] to be expressly reserved[.]" (Ballaine Decl. Ex. 5 at 000333-34 (Pesce Decl. Ex. 14).) Plaintiff's contrary reading of the letter, therefore, cannot be sustained.

9

that Amtrak breached the notice requirements in Condition 3, but also that they suffered actual prejudice as a result." (Pl.'s Opp'n at 45.)  The railroad makes a number of arguments to this end, contending that, first, the Court of Appeals has rejected the prejudice requirement only in suits involving primary policies, and has not yet addressed the impact of untimely notice under an excess policy where the insured has "complete control over the investigation, defense, valuation and settlement" of claims; second, Condition 3 is merely termed a "condition" rather than a "condition precedent" within the contested policies, though breach of the provision is included among the various exclusions from coverage; third, "in recent decades" a majority of jurisdictions, including Maryland, have rejected the "no prejudice" rule; and, finally, rejection of the "no prejudice" rule is consistent with the Restatement (Second) of Contracts' disproportionate forfeiture provision, which has been cited in other contexts by the Court of Appeals.  (Pl.'s Opp'n at 43-52.)  "There is every reason to believe[,]" Amtrak argues, "that, faced with this dispute, the District of Columbia Court of Appeals would not apply a 'no prejudice' rule and would require each of the defendants to demonstrate how it was actually prejudiced by Amtrak's delayed notice."  (*Id.* at 51.)

Though it would be appropriate for this Court to require a demonstration of prejudice if it "c[ould] be said with some assurance" that the District of Columbia Court of Appeals would not adhere the opposite rule in future cases involving excess insurance,[7] *see  Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943); *see also Sigmund v. Progressive Northern Ins. Co.*,

---

[7] While the District of Columbia Court of Appeals has jurisdiction to hear certified questions of law, it should be noted that such an avenue is unavailable here.  Under D.C. Code § 11-723, the District of Columbia Court of Appeals may answer only those questions certified to it by the United States Supreme Court, a federal Court of Appeals, or the highest appellate court of any state.  D.C. Code § 11-723(a).  Regardless, it may be that certification would not be proper in this case, as the statute provides that certification is appropriate only where "it appears to the certifying court there is no controlling precedent in the decisions of the District of Columbia Court of Appeals."  *Id.*

10

374 F.Supp. 2d 33, 36 (D.D.C. 2005) ("A federal court exercising diversity jurisdiction . . . is not to 'make bold forays into terra incognita in order to chart the way to justice, but . . . faithfully to apply the law of the state that the courts of the jurisdiction in which we sit, the District of Columbia, would apply[.]'") (citing *Dayton v. Peck, Stow & Wilcox Co.*, 739 F.2d 690, 694-95 (1st Cir. 1984) ("[W]e see no basis for even considering the pros and cons of innovative theories . . . . We must apply the law of the forum as we infer it presently to be, not as it might come to be.")); *M.A.S., Inc. v. Van Curler Broadcasting Corp.*, 357 F.Supp. 686, 691-92 (D.D.C. 1973) (holding that the court need not follow a decision of the District of Columbia Court of Appeals "where . . . it appears that the . . . Court of Appeals itself would not follow that decision"), this cannot be said here.  The District's "no prejudice" rule, for one, has not had time to atrophy, having been restated by the Court of Appeals as recently as 2001.  *See Travelers Indem. Co. of Ill. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 991 (D.C. 2001) (quoting *Greycoat Hanover F Street Ltd P'ship*, 657 A.2d at 768).  Moreover, the Court of Appeals' primary rationale for the standard -- that "[n]otice provisions in insurance contracts are of the essence of the contract," *see Travelers Indem. Co. of Ill.*, 770 A.2d at 991 (quoting *Greycoat Hanover F Street Ltd P'ship*, 657 A.2d at 768) -- is no less applicable in the context of excess insurance policies.  While Amtrak attempts to diminish the importance of the notice provisions within the contested agreements by asserting that it, rather that its insurers, "had complete control over the investigation, defense, valuation and settlement" of covered claims (*see* Pl.'s Opp'n at 46), the policies in fact provide the railroad's insurers with the right to both "investigate any . . . Claim made" and "participate . . . in the defense and control of any Claim which may be indemnifiable in whole or in part by [the policies]."  (Art. III, ¶ 9; *id.* ¶ 21.)  Finally, Amtrak is simply wrong in stating that the District of Columbia Court of Appeals "has not had occasion" to

apply the Restatement (Second) of Contracts' disproportionate forfeiture provision "to an insurance context like this." (*See* Pl.'s Opp'n at 51.)  The Court of Appeals has on a number of recent occasions considered insurance contracts but has never even mentioned the disproportionate forfeiture provision.  *See Travelers Indem. Co. of Ill.*, 770 A.2d at 991; *Greycoat Hanover F Street Ltd P'ship*, 657 A.2d at 768.

In short, while there are sound justifications for requiring a demonstration of actual prejudice by primary or excess insurers seeking to avoid liability for late-noticed claims, this Court is not in a position to conclude that the District of Columbia Court of Appeals would now find them persuasive.  As a result, Amtrak's contention that the insurers' Motion for Summary Judgment should be denied for want of prejudice must be itself rejected.

## CONCLUSION

Because Amtrak failed to provide timely notice to the defendant insurers of the Missouri plaintiff's claim, defendants are entitled to judgment as a matter of law.  It is hereby **ORDERED** that defendants' Motion for Summary Judgment [32] is **GRANTED**.  *See* Fed. R. Civ. P. 56(c).

**SO ORDERED**.

  /s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: August 25, 2006